No. 25-6126

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JAN 30 2026

FILED _____
DOCKETED _____
DATE        INITIAL

---

FRANCIS A. HUMES,

      Plaintiff-Appellant,

  v.

SARINO TORRISE,

    Defendant-Appellee.

---

N.D. Cal. No. 5:21-cv-08490-EJD (PR)

---

# APPELLANT'S OPENING BRIEF

---

On Appeal From the United States District Court
For the Northern District of California
Honorable Edward J. Davila, Presiding

Francis A. Humes
CDCR # BR-3697
CMC-East, D-7190
P.O. Box 8801
San Luis Obispo, CA 93409
(831) 241-8786

Plaintiff-Appellant in pro se

Table of Contents

Page

Jurisdictional statement . . . . . . . . . . . . . . . . . . . . . 1

Issues presented . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the case . . . . . . . . . . . . . . . . . . . . . .2

   I. Factual background . . . . . . . . . . . . . . . . . . . . 2

      A. Plaintiff's allegations . . . . . . . . . . . . . . . . . 3

      B. Defendant's allegations . . . . . . . . . . . . . . . . . 5

  II. Procedural history . . . . . . . . . . . . . . . . . . . . 6

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . 10

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

I. A reasonable jury could find that Torrise recklessly disregarded a
  substantial risk of serious harm to Humes when he failed to render
  or summon aid when Humes' wheelchair broke loose and flipped on him . . .14

   A. Standard of review . . . . . . . . . . . . . . . . . . . .14

     1. Pertinent standards for legal conclusions . . . . . . . . . . .14

     2. Pertinent standards for factual findings . . . . . . . . . . . 15

   B. Substantive legal standards . . . . . . . . . . . . . . . 16

     1. Failure to protect pretrial detainee . . . . . . . . . . . . . 16

     2. Reckless driving by an officer . . . . . . . . . . . . . . . 17

     3. Failure to render or summon medical aid . . . . . . . . . . . .18

   C. A reasonable officer would have "appreciated the high degree of
    risk involved" in continuing to drive when Humes' wheelchair broke
    loose and flipped . . . . . . . . . . . . . . . . . . . . 19

     1. After Humes' wheelchair broke loose . . . . . . . . . . . . .19

     2. After Humes' wheelchair flipped . . . . . . . . . . . . . . 20

   D. Immediately rendering or summoning emergency aid was a "reasonable
    available measure" that would have "abated the risk" of injury . . . .21

     1. Radioing or calling for advice or assistance was a "reasonable
      available measure" to abate the risk of harm . . . . . . . . . . 21

Table of Contents
(continued)

2. Slowing down and driving back to the jail when the wheelchair broke loose was a "reasonable available measure" to abate the risk of harm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

3. Stopping the van after Humes' wheelchair broke loose, and after it flipped, was a "reasonable available measure" to abate the risk of harm . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    a. A reasonable officer would know that he could disregard traffic laws to make an emergency stop anywhere on the route Torrise drove . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    b. A reasonable jury could find credible Humes' statements that it was safe to immediately stop the van . . . . . . . . . 22

    c. A reasonable jury could reject Torrise's claim that he could not safely stop sooner . . . . . . . . . . . . . . . . . 23

    d. Other evidence that Torrise could have stopped sooner is either not needed, not available, nonexistent, or stricken . . . . . . 24

E. Torrise's failures caused Humes' injuries . . . . . . . . . . . . . 26

II. The district court abused is discretion in striking Humes' amended opposition and supporting evidence . . . . . . . . . . . . . . . . . . . 26

A. Standard of review . . . . . . . . . . . . . . . . . . . . . . . . 26

B. The court granted summary judgment for a lack of evidence that the stricken documents contained . . . . . . . . . . . . . . . . 26

C. The court had discretion to consider the stricken evidence . . . . . 27

    1. The court had discretion to allow Humes to cure the deficiencies of the original "opposition" . . . . . . . . . . . . . . . . . 27

    2. The court had discretion to consider Humes' late amended opposition . . . . . . . . . . . . . . . . . . . . . 28

D. The court should have at least ordered Humes to show cause why his late amended opposition should be entertained, because it was aware of facts that could qualify as good cause or excusable neglect . . . 30

III. The district court erred when it sua sponte ordered Torrise to file a post-deadline motion for enlargement of time to file a late motion for summary judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

A. Standard of review . . . . . . . . . . . . . . . . . . . . . . . . 31

Table of Contents
(continued)

B. A district court has no discretion to hear a post-deadline request for extension of time absent a noticed motion showing excusable neglect . . . . . . . . . . . . . . . . . . . . . . . . . . 31

C. The court's order was functionally equivalent to a sua sponte order  32

D. Assuming arguendo the court had discretion to consider the motion, it abused it by not conducting an excusable neglect analysis, not giving Humes an opportunity to respond, and granting the motion on improper grounds . . . . . . . . . . . . . . . . . . . . . . . .34

   1. The court improperly conducted a "good cause" analysis . . . . 34

   2. The court improperly failed to allow Humes to respond . . . . . .34

   3. Torrise failed to show excusable neglect . . . . . . . . . . . 35

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . 38

Declaration of Inmate Filing . . . . . . . . . . . . . . . . . . .38

Addendum of Authorities . . . . . . . . . . . . . . . . . . . . .A-1

Table of Authorities

Page(s)

**Cases**

Ackerson v. Elliott (E.D. Cal. Jan. 22, 2024)
No. 2:21-cv-2205-WBS-KJN-P, 2024 U.S. Dist. LEXIS 11067 . . . . . . . . . 29

Akhtar v. Mesa
698 F.3d 1202 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . 30

Alcala v. Monsanto Co.
498 Fed. App'x 717 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . .28

Anderson v. Liberty Lobby, Inc.
407 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) . . . . . . . . . .14

Arellano v. Calderon (S.D. Cal. March 18, 2024)
No. 22-cv-441-TWR-LR, 2024 U.S. Dist. LEXIS 47592 . . . . . . . . . . . . .7

Barnes v. Sea Hawaii Rafting, LLC
889 F.3d 517 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . 2, 15

Bazarian v. Desarrollos
342 F. Supp. 3d 1 (D.D.C. 2018) . . . . . . . . . . . . . . . . . . . . 32

Beauford v. Mesa County
35 F.4th 1248 (10th Cir. 2022) . . . . . . . . . . . . . . . . . . . . .19

Black v. Wrigley
997 F.3d 702 (7th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . .36

Briones v. Riviera Motel & Casino
116 F.3d 379 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . .30

Brown v. Fortner
518 F.3d 552 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . .17

Briscoe v. Klaus
538 F.3d 252 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 30

Bulkin v. Ochoa (E.D. Cal. Dec. 7, 2016)
No. 1:13-cv-00388-DAD-EPG (PC), 2016 U.S. Dist. LEXIS 169423 . . . . . . .18

Campbell v. Callis (N.D. Cal. Feb. 20, 2024)
No. 21-cv-05187-JST, 2024 U.S. Dist. LEXIS 28873 . . . . . . . . . . . . . 7

Castro v. County of Los Angeles
833 F.3d 1060 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . 16, 20

Chambers v. Herrera
78 F.4th 1100 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . 16

Table of Authorities
(continued)

Cleveland v. Los Angeles County Sheriff's Dep't (C.D. Cal. Feb. 7, 2017)
No. 2:15-cv-01399-DSF-GJS, 2017 U.S. Dist. LEXIS 56182 . . . . . . . . . .18

Clergy & Laity Concerned v. Chicago Bd. of Educ.
586 F. Supp. 1408 (N.D. Ill. 1984) . . . . . . . . . . . . . . . . . .36

Dantzler v. Baldwin
133 F.4th 833 (8th Cir. 2025) . . . . . . . . . . . . . . . . . . . 19

Davila-Alvarez v. Escuela de Medicina Universidad Centro del Caribe
257 F.3d 58 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . 37

D'Braunstein v. Diaz-Durazo
131 F.4th 764 (9th Cir. 2025) . . . . . . . . . . . . . . . . . . . 18

Dickershaid v. Martel
648 Fed. App'x 618 (9th Cir. 2016) . . . . . . . . . . . . . . . . .31

Doux v. Western Express, Inc.
126 F.4th 978 (4th Cir. 2025) . . . . . . . . . . . . . . . . . . . 25

Drippe v. Tobelinski
604 F.3d 778 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . 31

Estate of Booker v. Gomez
745 F.3d 405 (10th Cir. 2014) . . . . . . . . . . . . . . . . . . . 18

Estate of Owensby v. Cincinnati
414 F.3d 596 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . .18

Estate of Taschek v. Fidelity Life Ass'n
740 F. Supp. 3d 1072 (D.Nev. 2024) . . . . . . . . . . . . . . . . .29

Estate of Wilson v. Las Vegas Metro. Police Dep't (D.Nev. Nov. 24, 2020)
No. 2:18-cv-01702-APG-VCF, 2020 U.S. Dist. LEXIS 220247 . . . . . . . . 25

Estelle v. Gamble
429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) . . . . . . . . . . . 19

Evanston Ins. Co. v. OEA, Inc.
556 F.3d 915 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . .17

Farmer v. Brennan
511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) . . . . . . . . . 16

First Penn-Pacific Life Ins. Co. v. Evans
659 F. Supp. 2d 727 (D.Md. 2009) . . . . . . . . . . . . . . . . . .32

Flett v. W.A. Alexander & Co.
302 F.2d 321 (7th Cir. 1962) . . . . . . . . . . . . . . . . . . . .36

Table of Authorities
(continued)

Garris v. F.B.I.
937 F.3d 1284 (9th Cir. 2019) . . . . . . . . . . . . . . . . 15

Gonzales v. Clough (E.D. Cal. June 24, 2024)
No. 2:17-cv-01760WBS-DMC-P, 2024 U.S. Dist. LEXIS 110748 . . . . . . . . .29

Gonzales v. Madden (S.D. Cal. Aug. 16, 2024)
No. 23-cv-2181-AGS-BJC, 2024 U.S. Dist. LEXIS 148048 . . . . . . . . . . .19

Gotses v. U.S. Bancorp (C.D. Cal. Nov. 14, 2019)
No. 2:17-cv-08670-CBM (AFMx), 2019 U.S. Dist. LEXIS 220040 . . . . . . . .32

Hampton v. California
83 F.4th 754 (9th Cir. 2023) . . . . . . . . . . . . . . . . .16

Harrington v. City of Chicago
433 F.3d 542 (7th Cir. 2006) . . . . . . . . . . . . . . . . .37

Hollingsworth v. Perry
558 U.S. 183, 130 S. Ct. 705, 175 L. Ed. 2d 657 (2010) . . . . . . . . . .35

Hunton v. Cal. Portland Cement Co.
50 Cal. App. 2d 684 (1942) . . . . . . . . . . . . . . . . . .25

Int'l Brotherhood of Elec. Workers v. Alaska Commns. Sys. Holdings, Inc.
424 F. Supp. 3d 598 (D. Ak. 2019) . . . . . . . . . . . . . . 29

Janny v. Gomez
8 F.4th 883 (10th Cir. 2021) . . . . . . . . . . . . . . . .15, 24

Jenkins v. Commonwealth Land Title Ins. Co.
95 F.3d 791 (9th Cir. 1996) . . . . . . . . . . . . . . . . . 31

J.K.J. v. City of San Diego
17 F.4th 1247 (9th Cir. 2021) . . . . . . . . . . . . . . . . 17

Jones v. Blanas
393 F.3d 918 (9th Cir. 2004) . . . . . . . . . . . . . . . .15, 30

Jones v. Central Bank
161 F.3d 311 (5th Cir. 1998) . . . . . . . . . . . . . . . . .32

Jones v. City of North Las Vegas
150 F.4th 1030 (9th Cir. 2025) . . . . . . . . . . . . . . . .14

Jones v. Henry
635 F. Supp. 3d 803 (D.Az. 2022) . . . . . . . . . . . . . . .15

Kendrick v. Pina (E.D. Cal. May 14, 2013)
No. 1:08-cv-1055-RCC, 2013 U.S. Dist. LEXIS 68572 . . . . . . . . . . . . 31

Table of Authorities
(continued)

Kirkpatrick v. County of Washoe
792 F.3d 1184 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . 22

Lafferty v. Williams
848 Fed. App'x 757 (9th Cir. 2021) . . . . . . . . . . . . . . . .15, 22

Lauria v. Lieb
152 F.4th 549 (3d Cir. 2025) . . . . . . . . . . . . . . . . . . . .28

Lemire v. Cal. Dep't of Corr. & Rehab.
726 F.3d 1062 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . 18

Lemoge v. United States
587 F.3d 1188 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . 34

Levy v. Client Servs. Inc. (D. Nev. May 15, 2024)
No. 2:23-cv-01099-APG-NJK, 2024 U.S. Dist. LEXIS 87379 . . . . . . . . . .29

Long v. City and County of Honolulu
511 F.3d 901 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . .19

Lopez v. City of Los Angeles Habra Heights (C.D. Cal. Dec. 4, 2024)
No. 8:21-cv-01193-JGB (MAR), 2024 U.S. Dist. LEXIS 239338 . . . . . . . . 29

Lopez v. Swaney
741 Fed. App'x 486 (9th Cir. 2018) . . . . . . . . . . . . . . . . .18

Lowry v. City of San Diego
858 F.3d 1248 (9th Cir. 2017) . . . . . . . . . . . . . . . . . 16, 24

Lozano v. Knudson
687 Fed. App'x 530 (9th Cir. 2017) . . . . . . . . . . . . . . . . .28

Lujan v. Nat'l Wildlife Fed.
497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) . . . . . . . 31, 34

Martin v. Giordano
185 F. Supp. 3d 339 (E.D.N.Y. 2016) . . . . . . . . . . . . . . . . 37

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) . . . . . . . . . .15

McClure v. Prisoner Transport Svcs. of America, LLC (E.D. Cal. Apr. 25, 2022)
No. 1:18-cv-00176-DAD-SKO, 2022 U.S. Dist. LEXIS 75332 . . . . . . . . . .17

McGuckin v. Smith
974 F.2d 1050 (9th Cir. 1992) . . . . . . . . . . . . . . . . . 19, 26

McRaven v. Sanders
577 F.3d 974 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . .19

Table of Authorities
(continued)

Meza v. Washington State Dep't of Social & Health Services
683 F.2d 314 (9th Cir. 1982) . . . . . . . . . . . . . . . .36

Napouk v. Las Vegas Metro. Police Dep't
123 F.4th 906 (9th Cir. 2024) . . . . . . . . . . . . . . . 17

Narvaez v. Mendez (C.D. Cal. Nov. 15, 2016)
No. ED CV 15-02157-CAS (AFM), 2016 U.S. Dist. LEXIS 195789 . . . . . . . .18

O'Doan v. Sanford
991 F.3d 1027 (9th Cir. 2021) . . . . . . . . . . . . . . . 24

Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd.
507 U.S. 380, 113 S. Ct. 1489, 1489 L. Ed. 2d (1993) . . . . . . . . .31, 34

Ratha v. Phatthana Seafood Co.
35 F.4th 1159 (9th Cir. 2022) . . . . . . . . . . . . . . . 26

Rodriguez v. Vaniperen
736 F. Supp. 3d 699 (D. S.D. 2024) . . . . . . . . . . . . .25

Rogers v. Boatright
709 F.3d 403 (5th Cir. 2013) . . . . . . . . . . . . . . . .17

Ross v. Williams
896 F.3d 958 (9th Cir. 2018) . . . . . . . . . . . . . . . .30

Russell v. Lumitap
31 F.4th 729 (9th Cir. 2022) . . . . . . . . . . . . . . . .17

Schmitz v. Asman (E.D. Cal. Dec. 15, 2023)
No. 2:20-cv-00195-DJC-CKD (PS), 2023 U.S. Dist. LEXIS 223694 . . . . . . .29

Sernoffsky v. Novak
773 F. Supp. 3d 988 (S.D. Cal. 2025) . . . . . . . . . . . .15

Sharma v. Dasha (D. Az. Jan. 5, 2024)
No. 22-00648-PHX-SPL (ESW), 2024 U.S. Dist. LEXIS 214531 . . . . . . . . .29

Smith v. Agdeppa
82 F.4th 994 (9th Cir. 2023) . . . . . . . . . . . . . . . .22

Smith v. District of Columbia
430 F.3d 450 (D.C. Cir. 2005) . . . . . . . . . . . . . . . 32

Swiderski v. Harman
336 F.R.D. 98 (E.D. Pa. 2020) . . . . . . . . . . . . . . . 30

Taylor v. Garrison Prop. & Cas. Ins. Co. (C.D. Cal. Apr. 26, 2018)
No. 2:17-cv-07550-RGK-GJS, 2018 U.S. Dist. LEXIS 238102 . . . . . . . . .29

Table of Authorities
(continued)

T.D. Pro. Servs. v. Truyo, Inc. (D.Az. Oct. 15, 2024)
No. CV-22-00018-PHX-MTL, 2024 U.S. Dist. LEXIS 189285 . . . . . . . . . . 29

Tennessee v. Camacho (S.D. Cal. Dec. 17, 2025)
No. 25-cv-2027-DMS-KSC, 2025 U.S. Dist. LEXIS 225967 . . . . . . . . . . . 7

Teradata Corp. v. S.A.P.
124 F.4th 555 (9th Cir. 2024) . . . . . . . . . . . . . . . . . . . . 14

Thomas v. Ponder
611 F.3d 1144 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . 16

Thompson v. Commonwealth
878 F.3d 89 (4th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . 17

Thomson v. St. Farm Fire & Cas. Co.
34 F.3d 932 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . .25

Thalheimer v. City of San Diego
645 F.3d 1109 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . 15

Tlamaka v. Serrell
244 F.3d 628 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . .19

United States v. Le Beau
71 F. Supp. 3d 888 (S.D. Cal. 2024) . . . . . . . . . . . . . . . . . 28

United States v. Perea-Rey
680 F.3d 1179 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . 24

United States v. Robinson
361 U.S. 220, 80 S. Ct. 282, 4 L. Ed. 2d 259 (1960) . . . . . . . . . . . 32

United States v. Springer
447 Fed. App'x 877 (10th Cir. 2011) . . . . . . . . . . . . . . . . . 32

Valderrama v. Rousseau
780 F.3d 1108 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . .18

Vincent v. Reyes (N.D. Cal. Oct. 5, 2020)
No. 19-cv-00329-RMI, 2020 U.S. Dist. LEXIS 184327 . . . . . . . . . . . 17

Waldron-Ramsey v. Pacholke
556 F.3d 1008 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . 31

Wallace v. Jackson
667 F. Supp. 2d 1267 (M.D. Al. 2009) . . . . . . . . . . . . . . . . .19

Washington v. City of St. Louis
596 F. Supp. 3d 1204 (E.D. Mo. 2022) . . . . . . . . . . . . . . . . .18

Table of Authorities
(continued)

Williams v. Sotelo
295 Fed. App'x 208 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . .19

Yow Wing Yeh v. Martel
751 F.3d 1075 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . 31

Yu v. Idaho State University
15 F.4th 1236 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . 15

Zurich Amer. Insur. Co. of Ill. v. Accuire, LLC
828 Fed. App'x 442 (9th Cir. 2020) . . . . . . . . . . . . . . . . . .34

**Constitutional Provisions**

United States Constitution,

    Eighth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . .17

    Fourteenth Amendment . . . . . . . . . . . . . . . . . .1, 6, 16, 17

**Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

California Penal Code § 830.1 . . . . . . . . . . . . . . . . . . . . 22

California Vehicle Code § 165 . . . . . . . . . . . . . . . . . . . . 22

California Vehicle Code § 21055 . . . . . . . . . . . . . . . . . . . 22

California Vehicle Code § 21718 . . . . . . . . . . . . . . . . . . . 22

California Vehicle Code § 22500 . . . . . . . . . . . . . . . . . . . 22

**Court Rules**

Fed. R. App. P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Fed. R. Civ. P. 6 . . . . . . . . . . . . . . . . . . . . . .13, 14, 32-36

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Table of Authorities
(continued)

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . 2, 8, 9, 15, 27, 28, 35, 36

Ninth Circuit Rule 28-2.7 . . . . . . . . . . . . . . . . . . . . . . . .2

N.D. Cal. Local Rule 7-3(a) . . . . . . . . . . . . . . . . . .8, 35, 36

**Other Authorities**

1 Bender's Federal Practice Forms, Comment on Rule 6 . . . . . . . . .32, 35

Manual of Model Civil Jury Instructions for the District Courts of the
    Ninth Circuit, § 9.3 (2025) . . . . . . . . . . . . . . . . . . . .17

Moore, James W., et al., Moore's Federal Practice - Civil (3d ed. 2025),

    § 6.06 . . . . . . . . . . . . . . . . . . . . . . . .32, 34, 35

    § 56.72[3] . . . . . . . . . . . . . . . . . . . . . . . . . . .27

Weinstein, Jack B., and Margaret A. Berger, Weinstein's Federal Evidence
    (Mark S. Brodin, ed., Matthew Bender 2d ed. 2025), § 702.03[2] . . . .25

## JURISDICTIONAL STATEMENT

The subject matter jurisdiction of the district court was under 28 U.S.C. §§ 1331 and 1343(a)(4) for Plaintiff's civil rights action pursuant to 42 U.S.C. § 1983 for the deprivation, under color of law, of his rights under the Fourteenth Amendment, by a state law enforcement officer.

Appellate jurisdiction lies under 28 U.S.C. § 1291 because the district court's entry of summary judgment (ECF 62) on August 29, 2025, was a final order that disposed of all claims between all parties. Appellant filed a notice of appeal (ECF 63) on September 26, 2025, which was timely under FRAP 4(a)(1)(A).

## ISSUES PRESENTED

1. Whether the district court erred in granting summary judgment for Torrise where Humes proffered admissible evidence that when Torrise was transporting Humes in a jail van down a flat, straight, two-way county road on a clear morning, he observed Humes' wheelchair break free from the floor straps securing it, roll free, and Humes and passengers screaming to stop, but Torrise failed to stop, go back to the jail a quarter mile away, or radio for assistance, which then led to Humes' wheelchair flipping upside down onto Humes' neck, trapping and choking him into convulsions and rendering him unconscious, all while six other passengers screamed for Torrise to stop, which he unreasonably ignored for 10 minutes before pulling over and calling 911, all of which caused Humes permanent spinal cord and disc injuries.

2. Whether the district court abused its discretion by striking Humes' untimely amended opposition to Torrise's motion for summary judgment, where it included two new affidavits curing the exact deficiency the court granted judgment on, was filed before the court ruled, did not prejudice Torrise, and where the court did not issue an order allowing Humes to show cause for the

1

delay, despite being aware of reasons that could establish excusable neglect, and in light of the court not sanctioning Torrise for two missed deadlines, and extending his time to file for summary judgment to a total of 459 days.

3. Whether the district court had discretion to sua sponte grant Torrise a post-deadline extension of time to file his motion for summary judgment or, if so, whether it abused its discretion by granting it.

## PERTINENT AUTHORITIES

Pursuant to Circuit Rule 28-2.7, an addendum is bound with this brief which sets forth verbatim and with proper citation all pertinent constitutional provisions, statutes, regulations, and rules.

## STATEMENT OF THE CASE

### I. Factual Background

Because all three of Humes' arguments pertain to summary judgment, the facts alleged by Humes and Torrise are separated. Humes also cites both his original and second amended complaint, since this Court conducts a de novo review of summary judgments, and has held that a superseded verified complaint is still competent evidence on summary judgment. Barnes v. Sea Hawaii Rafting, LLC, 889 F.3d 517, 532 (9th Cir. 2018). Both the district court and this Court "may consider other materials in the record" in reviewing summary judgment arguments. Fed. R. Civ. P. 56(c)(3). This includes the six-page factual recitation Humes filed as part of his original complaint, which the court clerk labeled a "letter" even though it was not addressed to anyone. (See ECF 5.)

Humes does not cite any of the evidence he submitted with his amended opposition to Torrise's motion for summary judgment, because all of those documents were stricken by the district court. (ECF 54-58.) These documents included a statement of material facts in dispute, and three declarations.

(Id.)  These are only referenced in arguments II and III below.

## A. Plaintiff's Allegations

Humes was the owner-operator of Peninsula Asphalt & Concrete in Monterey County, California.  (ECF 19, p. 9:7.)  He was confined to a wheelchair due to a recent injury that paralyzed his lower left side.  (ECF 5, p. 1.)  On the morning of the incident at issue in this case, he was a pre-trial detainee at the Monterey County Jail, and a late add-on for an appearance at the Monterey County Superior Court.  (ECF 19, p. 4:15; ECF 5, p. 1.)  Defendant Torrise was a Sheriff's Deputy assigned that day to transport Humes and six other detainees.  (ECF 5, pp. 1-2.)

Torrise and two deputies were unfamiliar with the jail's new van, so it took them 15 minutes to load Humes into it using the van's wheelchair lift. (Id.)  Inside the van, Torrise attached wheelchair security straps, built in to the van floor, to Humes' wheelchair.  (ECF 5, p. 1.)  Humes already had his hands handcuffed to a belly chain, and his legs shackled.  (Id.)  The van's design situated Humes  directly behind Torrise, separated by only a clear plastic divider, which left Torrise's view of Humes completely unobstructed. (ECF 19, p. 5:9.)

Torrise exited the jail in the van but, due to jail construction, had to drive in the wrong direction for a quarter mile before taking a U-turn. (ECF 19, p. 5:7.)  But during this U-turn the safety straps broke free and Humes' wheelchair began rolling around "out of control."  (ECF 19, pp. 5:11, 8:12.)

Immediately Humes and the other passengers began yelling and screaming for Torrise to stop the van so he could re-secure the wheelchair.  (ECF 19, pp. 5:13, 9:20; ECF 5, p. 1.)  At this point Torrise was only about 1300 feet away from the jail's parking lot.

3

(ECF 19, p. 5:7, 5:23.) Torrise failed to stop the van. (ECF 19, p. 5:27.) Although his van was equipped with a radio, Torrise failed to radio anyone. (ECF 19, p. 8:18.) Torrise also had a working cellphone, but failed to call anyone. (ECF 19, p. 5.) Instead, Torrise told Humes and the other passengers "there is nothing I can do because I don't have another officer with me, it's gotta wait till we get to the courthouse." (ECF 5, p. 1.) Torrise could have stopped "immediately." (ECF 19, p. 8:20.) But instead he kept driving for about two minutes, "passing several opportunities" and "safe location[s]" "to stop and resecure [Humes'] wheelchair." (ECF 19, pp. 5:15, 5:27, 6:3, 6:10.) Although he claimed he could not stop due to not having an officer with him, Torrise stopped a few minutes later, got out of the van, and made a phone call. (ECF 19, p. 6:28.)

After ignoring Humes' and others' pleas to stop for about two minutes, Torrise accelerated the van, causing Humes' wheelchair to flip backwards, striking his head and rolling Humes and the wheelchair upside down. (ECF 5, p. 1.) The entire weight of the wheelchair, plus Humes' 290 pounds, was now on his neck. (ECF 5, p. 1; ECF 1, p. 4.) Humes was also entangled in the straps and, due to his restraints, could not move or breathe. (ECF 5, p. 1; ECF 19, p. 6:28.) Humes' oxygen or blood supply was cut off, and the "panic" he felt "was like drowning." (ECF 5, p. 1.) The other passengers began screaming and pleading for Torrise to stop. (Id., p. 2.) Humes started seizing, convulsing, and lost consciousness. (ECF 19, pp. 6:28, 8:12, 8:21.)

Torrise observed everything, but did nothing. He kept driving down Sherwood Drive, in the middle of the city of Salinas, past parking lots, hospitals, restaurants, and everything else. (ECF 5, p. 1; ECF 61-1, p. 9, fn. 4 (presumptive judicial notice by court of Google Maps of road).)

4

Torrise kept driving for nearly 10 minutes, all while Humes was directly behind him, upside down on his neck, choking and convulsing while six people screamed. (ECF 19, pp. 6:28, 9:17; ECF 5, p. 2; ECF 1, p. 4.) Finally, a half mile before the courthouse, Torrise stopped the van at an intersection, got out, and made a call on his cellphone. (ECF 19, p. 6:28.)

Humes was still unconscious when paramedics arrived and put him in the ambulance. (ECF 19, p. 8:12.) They rushed him to the Emergency Room at Natividad Medical Center hospital, where Humes eventually woke up. (ECF 5, p. 2.) Doctors took multiple scans and found that Humes had a focal annular tear of his spinal cord, herniated cervical and lumbar spinal discs, nerve root abutment, and other injuries. (ECF 19, p. 6:15.) Psychologists would later diagnose Humes with Post Traumatic Stress Disorder. (ECF 19, p. 9:10.)

### B. Defendant's Allegations

Over three years after Humes filed his complaint in this case, Torrise gave a declaration, in support of his motion for summary judgment, which set forth his version of events. Humes quotes verbatim the four relevant paragraphs:

> 4. On August 2, 2019, one of my assignments was to load incarcerated persons into the ADA van and transport them to their court appearances that afternoon. One of the several individuals to be transported was Plaintiff Francis Humes, who was seated in a wheelchair when he arrived at the van. I loaded Plaintiff into the van, secured his wheelchair by the four-point retracting straps and then checked to confirm all straps were secure. I then proceeded to drive the van towards Monterey County Superior Court.

> 5. Approximately one quarter mile from the jail, Plaintiff announced that the wheelchair straps had become loose. I informed Plaintiff that I would pull the van over at the earliest opportunity to do so safely.

> 6. Once the van was stopped, I opened the door to the side compartment where Plaintiff was located and found Plaintiff laying on his back with his head pressed against the lift door. I immediately called 911 and fire and ambulance personnel were dispatched to the scene.

> 7. Plaintiff was transported to Natividad Medical Center for evaluation and I accompanied Plaintiff to the hospital. Plaintiff was evaluated and discharged that same day.

(ECF 42-2, p. 2.)

Torrise attached an unauthenticated report he claimed to have authored the day of the incident. (ECF 42-2, p. 5.) The report is substantively identical to the declaration except for two points. First, Torrise gave the location where he stopped to call 911: at an intersection a half mile away from the courthouse. (Id.) Second, Torrise claimed that when he opened the van door "Humes told me that he was having a hard time breathing at that moment he stopped talking and began to shake as if he was having a seizure." (Id.)

## II. Procedural History

Humes filed his initial complaint against Torrise, the Monterey County Jail, and Monterey County Sheriff Steve Bernal, for gross negligence under California state law, and for violating his Fourteenth Amendment right as a pre-trial detainee to protection from a substantial risk of serious harm. (ECF 1.) The court allowed the claims against Torrise to proceed, but dismissed the others as barred under the doctrine of vicarious liability. (ECF 8, 11.) Humes' amended complaint was also defective, but the court accepted his second amended complaint. (ECF 21.)

Humes proceeded in pro se, in forma pauperis, and his complaints were handwritten, with unnumbered paragraphs, and noncompliant with many other basic court rules. (ECF 1, 10, 19.) Humes asked the court to appoint counsel twice: first upon filing his initial complaint via formal motion (ECF 3), and second

6

after filing his half-page "response" to Torrise's motion for summary judgment
(ECF 51.)  The initial motion declared that the "jail dosnt [sic] allow pretrial
detainees to possess any of there [sic] own legal materials.  The issues in
this case require research and investigation."  (ECF 3, ¶ 2.)  Humes also had
"no access to law library and ... made repeated efforts to obtain lawyer."
(Id., ¶¶ 4, 5.)  A declaration was attached from a fellow detainee who had
observed Humes for 10 months as suffering from "constant struggles with his
mental health."  (ECF 4.)  Sounds of keys, slamming doors, or deputies would
make him "mentally and physically sick for days."  (Id.)  Jail deputies also
threatened Humes with being transported to court "by force," and put him in
"administrative segregation with no  write up or apparent reason."  (Id.)

By the time of Humes' second motion for appointment of counsel, he
had informed the court that (1) his mental health had deteriorated so badly
that his level of care had been increased to the CDCR's Enhanced Outpatient
Program, and (2) his entire file of legal documents pertaining to the case
was destroyed by a CDCR transportation officer, and that his grievance on
this issue had been sustained.  (ECF 46, 49.)  The Enhanced Outpatient Program
is only for inmates with "severe functional impairment" who are "unable to
care for themselves" due to "acute onset or significant decompensation of
a serious mental disorder."  Arellano v. Calderon, No. 22-cv-441-TWR-LR,
2024 U.S. Dist. LEXIS 47592, * 5 (S.D. Cal. March 18, 2024); Campbell v.
Callis, No. 21-cv-05187-JST, 2024 U.S. Dist. LEXIS 28873, * 2 (N.D. Cal.
Feb. 20, 2024); Tennessee v. Camacho, No. 25-cv-2027-DMS-KSC, 2025 U.S. Dist.
LEXIS 225967, * 7 n.3 (S.D. Cal. Dec. 17, 2025).

The court's order accepting Humes' second amended complaint also stated
that "Defendants shall file a motion for summary judgment or other dispositive
motion."  (ECF 21.)  The order gave Torrise, the only defendant, 91 days to

do so, but no option to decline doing so if no basis existed for one. (Id.)

Torrise obtained multiple extensions of time, but 12 months after the court's order to file his motion, he still had not, and so the court referred the case to another judge for a settlement conference. (ECF 21, 30.) The parties failed to settle so, six months later, the court lifted the stay and once again ordered Torrise to file a dispositive motion. (ECF 36.) Torrise obtained another extension of time, through December 27, 2024, but failed to file anything. (ECF 38.) Three weeks after his deadline had lapsed, the court issued an "Order Directing Defendant to File Motion for Extension of Time and Show Good Cause for Failure to Comply With Court's Deadline." (ECF 39.) Torrise filed said motion two weeks later but, rather than allow Humes to respond as required by N.D. Local Rule 7-3(a), the court granted the motion five days after it was filed. (ECF 40, 41.) By the time Torrise filed his motion for summary judgment -- ignoring the time stayed for mediation -- the court had granted him one year and 94 days of time to do so. (ECF 21, 30, 36, 42.) Including the time stayed during mediation, from the court's order to Torrise to file for summary judgment, to the date he actually did, he was given 656 days. (Id.)

Within two weeks of being served with the summary judgment motion, Humes filed a four-sentence "Motion for court to deny def. motion for summary judgement or at least stay summary judgement proceeding for 30 days to allow plaintiff to finish discovery and then restart the 28 day time allocation for plaintiffs opposition." (ECF 46.) In his attached declaration, Humes said that he was struggling with short-term memory issues and "irrational thoughts, due to run away thought process." (Id., p. 2:10.) He also said that his "entire trial file" in the case was destroyed, and attached his grievance and the response  thereto in which CDCR admitted responsibility for the loss. (Id.)

Humes' "motion" failed to comply with the court's order (ECF 21) requiring him to attach declarations, and cite record facts, in his opposition. This also violated Rule 56(c)(1)(A).

The court did not issue a Rule 56(e)(1) order to "give [Humes] an opportunity to properly support or address the fact[s]" asserted in Torrise's motion. The court also did not issue a Rule 56(d)(1) order deferring consideration of the motion, or a Rule 56(d)(2) order allowing Humes more "time to obtain affidavits or declarations or to take discovery."

Torrise replied within 14 days. (ECF 47.) He argued that Humes had failed to conduct any discovery in the case and had failed to "dispute a single fact set forth" in Torrise's motion. (Id., p. 3:3.)

Within three weeks of the reply, Humes was transferred to another prison because his mental health had deteriorated. (ECF 49.) He was assigned to the Enhanced Outpatient Program. (Id.) Because the new prison was in the state's highest-risk area for Valley Fever infection, which he tested negative for, Humes was transferred to yet another prison three weeks later. (ECF 50.) But during these weeks pending transfer, Humes met an inmate who prepared a new opposition, a statement of disputed facts, and three declarations for Humes. (ECF 54-58.) These documents cured the deficiencies in Humes' prior "motion." (Id.)

Seven days later Torrise filed a reply to the new opposition, arguing the new document was an untimely, unauthorized "supplemental opposition." (ECF 60.)

Three days after the reply, the court entered summary judgment. (ECF 61, 62.) It also struck the new opposition and supporting documents as untimely. (ECF 61.) The entirety of the court's reasoning was that:

> Viewing the evidence in the light most favorable to
> Plaintiff shows that he has failed to establish all four

elements for a due process failure-to-protect claim
against Defendant Torrise. The first element requires
that Plaintiff show Defendant Torrise made an "intentional
decision with respect to the conditions" under which
Plaintiff was confined in the van. It is undisputed that
Defendant Torrise secured Plaintiff in his wheelchair
with the four-point retracting straps and also checked to
confirm that the straps were secure; furthermore,
Plaintiff states that other deputies assisted in this
matter. See supra at 4. This undisputed evidence shows
that Defendant Torrise made an intentional decision to
ensure Plaintiff and his wheelchair were securely in
place before he began to drive. Assuming as true that the
straps somehow came loose within a few minutes of
transport, the parties dispute the nature of Defendant
Torrise's response to Plaintiff's request for assistance.
Defendant Torrise states that
he informed Plaintiff that he needed to find a safe place
to stop. Plaintiff states that Defendant Torrise refused
to stop until he got to the courthouse. However, the
undisputed evidence is that Defendant Torrise did in
fact stop before reaching the courthouse, specifically at
the corner of Market Street and Pajaro Street.[4] See
supra at 3. Regardless of what Defendant allegedly said
to Plaintiff, Defendant Torrise did not ignore Plaintiff's
request but rather looked for and did in fact stop the van
at a safe place before reaching the courthouse. Plaintiff
provides no evidence indicating that Defendant had an
opportunity to stop sooner but deliberately chose not to
do so. In light of this undisputed evidence, it cannot
be said that Defendant Torrise failed to take reasonable
available measures to abate a risk to Plaintiff by
deciding to find a safe place to pull over. As such,
it cannot be said that Defendant Torrise's conduct was
objectively unreasonable in this regard or that he acted
with reckless disregard to Plaintiff's safety. Because
Defendant acted reasonably, it cannot be said that his
failure to do so caused Plaintiff's injuries, the fourth
element. In response, Plaintiff has failed to come forth
with evidence from which a jury could reasonably render a
verdict in his favor.

(ECF 61-1, pp. 9-10.)

This timely appeal follows. (ECF 62.)

## SUMMARY OF ARGUMENT

### I

A reasonable jury could find that Torrise recklessly disregarded a

a substantial risk of serious harm to Humes when he saw Humes' wheelchair

break loose during transport, but failed to stop to resecure it, causing Humes to flip upside down, and then kept driving for 10 minutes rather than summoning aid, causing Humes serious injury.

The lower court admitted that "the parties dispute the nature of Torrise's response to Plaintiff's request for assistance." That is true, and should have been enough to preclude summary judgment. But the court said this was irrelevant because Torrise stopped the van and called 911 a half mile before the courthouse. And, the court claimed, since Humes failed to submit evidence that Torrise could have stopped sooner, no jury could find that Torrise acted unreasonably.

The court made three critical mistakes. First, it misframed the entire case as turning on whether Torrise stopped the van at a safe place before reaching his final destination, the courthouse. This question is immaterial. Rather, the determinative issue is the reasonableness of Torrise's delay in responding to (1) Humes' wheelchair breaking loose, and (2) Humes flipping upside down and choking.

This circuit has repeatedly found that a transportation officer evinces deliberate indifference to an inmate's substantial risk of serious harm where the officer knows that the inmate is not seat-belted or otherwise secured in the vehicle, and yet drives recklessly, causing serious injury. Humes proffered evidence that when his wheelchair broke loose, Torrise could have stopped immediately, but instead kept driving for minutes, causing Humes' wheelchair to flip and seriously injure him.

Next, after Torrise observed Humes' wheelchair flip, Torrise failed to radio for help, slow down, or pull over. Instead, he kept driving for 10 minutes, while six passengers screamed for him to stop, causing Humes further injury. That Torrise eventually stopped is off point. This Court has

11

consistently held that that an officer who unreasonably delays rendering or summoning necessary emergency aid demonstrates deliberate indifference to a substantial risk of serious harm.

Second, the lower court erred in finding that Humes submitted no evidence to support his claims. On summary judgment, statements made on personal knowledge in a verified complaint are the evidentiary equivalent of a sworn affidavit. Humes was a percipient witness to Torrise's acts and omissions, as well as to the road and other relevant conditions, so his verified complaint allegations on these facts should have been accepted by the court.

Finally, the court improperly made a credibility determination by accepting Torrise's claim that he stopped as soon as he could safely do so, but rejecting Humes' claim that Torrise could have stopped immediately. The court gave no example of what kind of evidence could possibly establish the relative unquantifiable "safeness" of hypothetical locations where Torrise may have stopped. But since the requirements for safely driving under given road conditions are, by law, within the common knowledge of a layperson, a jury could resolve the issue by evaluating the parties' testimony in light of judicially noticeable historical road conditions. A reasonable jury could thus find credible Humes' statements that there were numerous safe locations to stop, precluding summary judgment on this basis as well.

## II

The district court abused its discretion in striking for untimeliness Humes' amended opposition to summary judgment and supporting evidence.

After the court gave Torrise 459 days to file for summary judgment, and excused his two expired deadlines to do so, Humes, a pro se state prisoner, filed a one-paragraph, procedurally noncompliant response to Torrise's motion in which he asked the court to deny the motion or grant time to conduct further

discovery. The court was aware that Humes' case file had been destroyed, and that he was so gravely mentally ill that he had just been transferred to an intensive care facility.

A few months later, and prior to the court's ruling on summary judgment, Humes found an inmate legal assistant who prepared an amended opposition that cured the deficiencies. Humes also submitted a declaration from a passenger on the van who witnessed the events at issue in the case at bar, and submitted his own declaration which set forth further facts supporting his claims. These declarations were further evidence that Torrise could have stopped his van immediately after both incidents, and thus were the exact type of evidence the lower court said Humes should have submitted to avoid summary judgment.

Although Humes failed to seek leave to file the late opposition, courts in this circuit have routinely considered late-filed motions, even by attorneys, as de facto requests for leave to be filed. And based on facts similar to those here, courts in this circuit have often exercised their discretion to consider untimely documents and evidence in summary judgment proceedings.

### III

The district court erred when it sua sponte ordered Torrise to file a post-deadline motion for enlargement of time to file a late motion for summary judgment.

Under a plain reading of Rule 6, courts have repeatedly found that they are without jurisdiction to sua sponte grant post-deadline extensions of time. Rather, the party seeking leave to file a document post-deadline must do so via noticed motion showing excusable neglect. This provides the opposing party an opportunity to show prejudice or other reasons why leave should be denied.

But in this case, when Torrise missed a second deadline to file for summary judgment, and failed to request more time, and failed to move for leave

to file post-deadline, the court took it upon itself to order Torrise to file a post-deadline, nunc pro tunc motion asking for more time, showing good cause for the failure. Then, when Torrise did so, the court broke further rules by not allowing Humes an opportunity to respond, and instead granted Torrise's motion in five days, before Humes even got it. The court lacked discretion to do either.

But assuming arguendo the court had discretion to do this, it abused it. Excusable neglect under Rule 6 must be analyzed under the high court's Pioneer factors, but here the court failed to. And even if it had, the reason given by Torrise's counsel for the delay -- the death of a stepparent -- has been routinely rejected as not meeting the excusable neglect standard absent a causal nexus, unalleged here. Either way, if any document should have been stricken in this case, it was Torrise's 459-day-old, twice-expired summary judgment motion.

## ARGUMENT

I. A reasonable jury could find that Torrise recklessly disregarded a substantial risk of serious harm to Humes when he failed to render or summon aid when Humes' wheelchair broke loose and flipped on him

A. Standard of review

1. Pertinent standards for legal conclusions

Review is de novo of a district court's entry of summary judgment. Jones v. City of North Las Vegas, 150 F.4th 1030, 1035 (9th Cir. 2025). This Court determines "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." Teradata Corp. v. S.A.P., 124 F.4th 555, 572 (9th Cir. 2024). The evidence is viewed "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 407 U.S. 242, 252-3, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A "genuine issue" exists "where the record

taken as a whole 'could ... lead a rational trier of fact to find for the non-moving party ...'" Crowe v. Wormuth, 74 F.4th 1011, 1035 (9th Cir. 2023) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

   2. Pertinent standards for factual findings

   "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Yu v. Idaho State Univ., 15 F.4th 1236, 1242 (9th Cir. 2021).  The evidence does not need to be admissible in form, but it must be admissible in content. Garris v. F.B.I., 937 F.3d 1284, 1294 (9th Cir. 2019).

   Although normally a court has discretion as to whether to consider record material not cited by the parties in its summary judgment analysis, any admissible allegations, based on personal knowledge, in verified pro se pleadings, must be considered whether cited or not. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); accord Sernoffsky v. Novak, 773 F.Supp.3d 988, 1013 (S.D. Cal. 2025), Jones v. Henry, 635 F.Supp.3d 803, 808 (D.Az. 2022).

   "A plaintiff's verified complaint may be used as an affidavit for opposing summary judgment" "if it is based on personal knowledge" and "sets forth the requisite facts with specificity." Lafferty v. Williams, 848 Fed. App'x 757, 758 (9th Cir. 2021), Thalheimer v. City of San Diego, 645 F.3d 1109, 1118 (9th Cir. 2011).  Such facts remain competent evidence even in a superseded verified complaint. Barnes v. Sea Hawaii Rafting, LLC, 889 F.3d 517, 532 (9th Cir. 2018).

   "There is nothing in [Rule 56] to suggest that a nonmovant's affidavits alone cannot -- as a matter of law -- suffice to defend against a motion for summary judgment." Janny v. Gomez, 8 F.4th 883, 900 (10th Cir. 2021).  "Even uncoroborated and self-serving testimony may be sufficient to establish a

genuine dispute of fact where it is based on personal knowledge, legally relevant and internally consistent." Lowry v. City of San Diego, 858 F.3d 1248, 1262 (9th Cir. 2017).

"Particularly in civil rights cases," where the prisoner is proceeding pro se, the court's "obligation remains ... to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt." Chambers v. Herrera, 78 F.4th 1100, 1104 (9th Cir. 2023). Courts "should avoid applying summary judgment rules strictly" in pro se inmate cases. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). These principles ensure that a pro se inmate's "pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(f).

## B. Substantive legal standards

### 1. Failure to protect pretrial detainee

The U.S. Constitution imposes a duty on officials to "take reasonable measures to guarantee the safety of inmates." Hampton v. California, 83 F.4th 754, 756 (9th Cir. 2023) (quoting Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). An officer violates a pretrial detainee's rights under the Fourteenth Amendment where:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved -- making the consequences of of the defendant's conduct obvious;
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

Castro v. County of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016), see

<u>also</u> Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, § 9.3 (2025).

Objective reasonableness is assessed "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." <u>J.K.J. v. City of San Diego</u>, 17 F.4th 1247, 1257 (9th Cir. 2021). The defendant's "actual subjective appreciation of the risk" of harm to the plaintiff is not an element of the inquiry. <u>Russell v. Lumitap</u>, 31 F.4th 729, 740 (9th Cir. 2022).

"Only where the evidence is susceptible of only one interpretation can the question of reasonableness be decided as a matter of law." <u>Evanston Ins Co. v. OEA, Inc.</u>, 556 F.3d 915, 920 (9th Cir. 2009). "Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, that is a question best resolved by a jury." <u>Napouk v. Las Vegas Metro. Police Dep't</u>, 123 F.4th 906, 928 (9th Cir. 2024).

## 2. Reckless driving by an officer

A transportation officer violates an inmate's rights under the Eighth or Fourteenth Amendment when he knows the inmate is not seat-belted or otherwise secured in the vehicle, and drives recklessly, causing serious injury. <u>Thompson v. Commonwealth</u>, 878 F.3d 89, 101 (4th Cir. 2017) (collecting cases); <u>Rogers v. Boatright</u>, 709 F.3d 403, 409 (5th Cir. 2013); <u>Brown v. Fortner</u>, 518 F.3d 552, 560 (8th Cir. 2008).

Courts in our circuit have long found the same. <u>See, e.g.</u>, <u>Ford v. Cassol</u>, No. 2:20-cv-02087-KJM-EFB (PC), 2023 U.S. Dist. LEXIS 9332, * 12 (E.D. Cal. Jan. 19, 2023) (denying summary judgment on claim); <u>McClure v. Prisoner Transport Services of America, LLC</u>, No. 1:18-cv-00176-DAD-SKO, 2022 U.S. Dist. LEXIS 75332, * 50-51 (E.D. Cal. Apr. 25, 2022) (denying summary judgment); <u>Vincent v. Reyes</u>, No. 19-cv-00329-RMI, 2020 U.S. Dist. LEXIS 184371,

* 9-10 (N.D. Cal. Oct. 5, 2020) (denying summary judgment); Bulkin v. Ochoa,
No. 1:13-cv-00388-DAD-EPG (PC) 2016 U.S. Dist. LEXIS 169423, * 25 (E.D. Cal.
Dec. 7, 2016) (denying summary judgment); Cleveland v. Los Angeles County
Sheriff's Dep't, No. 2:15-cv-01399-DSF-GJS, 2017 U.S. Dist. LEXIS 56182, *
10-11 (C.D. Cal. Feb. 7, 2017) (denying motion to dismiss); Narvaez v. Mendez,
No. ED CV 15-02157-CAS (AFM), 2016 U.S. Dist. LEXIS 195789, * 22 (C.D. Cal.
Nov. 15, 2016) (denying motion to dismiss).

### 3. Failure to render or summon medical aid

"[A]n objective standard applies to constitutional claims of inadequate
medical care brought by pretrial detainees." D'Braunstein v. Diaz-Durazo,
131 F.4th 764, 769 (9th Cir. 2025). The standard is one of "objective
deliberate indifference in the face of substantial risk of the plaintiff
suffering serious harm." Id. A "failure to summon prompt medical attention"
is unreasonable if it "could result in further significant injury." Id. at 770.

"The denial of medical care in the face of an obvious emergency
constitutes deliberate indifference." Lopez v. Swaney, 741 Fed. App'x 486,
487 (9th Cir. 2018).

Thus "officers must seek the necessary medical attention for a detainee
when he or she has been injured ... by either promptly summoning the necessary
medical help or by taking the injured detainee to a hospital." D'Braunstein
at p. 769.

Even a delay of a few minutes can constitute deliberate indifference.
See, e.g., Estate of Booker v. Gomez, 745 F.3d 405, 421 (10th Cir. 2014) (three
minute delay); Valderrama v. Rousseau, 780 F.3d 1108, 1117, 1121-23 (11th Cir.
2015) (three and a half minutes); Washington v. City of St. Louis, 596 F.Supp.3d
1204, 1213-14 (E.D. Mo. 2022) (four and a half minutes); Lemire v. Cal. Dep't of
Corr. & Rehab., 726 F.3d 1062, 1082 (9th Cir. 2013) (five minutes); Estate of

18

Owensby v. Cincinnati, 414 F.3d 596, 603 (6th Cir. 2005) (six minutes); McRaven v. Sanders, 577 F.3d 974, 983 (8th Cir. 2009) (seven minutes); Wallace v. Jackson, 667 F.Supp.2d 1267, 1274-75 (M.D. Al. 2009) (eight minutes); Gonzales v. Madden, No. 23-cv-2181-AGS-BJC, 2024 U.S. Dist. LEXIS 148048, * 9 (S.D. Cal. Aug. 16, 2024) (10 minutes); Beauford v. Mesa County, 35 F.4th 1248, 1267 (10th Cir. 2022) (10 minutes); Tlamaka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001) (10-minute delay).

Although safety reasons can, in some instances, justify an officer's delay in summoning or rendering aid, "the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." Valderrama at p. 1116; Long v. City and Cnty. of Honolulu, 511 F.3d 901, 908 (9th Cir. 2007).

The "unnecessary and wanton infliction of pain," even without physical injury, can satisfy the "injury" requirement. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The continuation of pain that could have otherwise been abated, even absent physical injury, can constitute serious harm. McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992); Williams v. Sotelo, 295 Fed. App'x 208, 209 (9th Cir. 2008). "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." Dantzler v. Baldwin, 133 F.4th 833, 847 (8th Cir. 2025).

## C. A reasonable officer would have "appreciated the high degree of risk involved" in continuing to drive when Humes' wheelchair broke loose and flipped

### 1. After Humes' wheelchair broke loose

As set forth in his verified complaint, Humes' personally observed multiple facts that a jury could find adequately establish that Torrise was aware of the high degree of risk involved in continuing to drive after Humes' wheelchair broke loose. Torrise was aware that security straps were necessary for the safe

19

transport of all wheelchairs, because the van was equipped with the securement system, and he used it to help secure Humes' wheelchair. Torrise was also aware that     he was not trained in the use of the straps because the van was brand new, as he told Humes. Torrise was further aware that Humes' wrists were bound to his belly chain, and his legs shackled, such that he could not catch or steady himself if the wheelchair were loose. A jury could also reasonably infer that Torrise knew that Humes was partly paralyzed, further handicapping his ability to prevent injury. Finally, Torrise heard the screams of Humes and six other passengers the instant the wheelchair broke loose and began rolling around, and a jury could infer he observed it as well since he was inches away from Humes behind a clear divider. In sum, even under the more stringent subjective awareness standard inapplicable here, Humes has satisfied this part of the third Castro factor. See Castro, 833 F.3d at p. 1070.

  2. After Humes' wheelchair flipped

     A reasonable jury could also find, based on Humes' observations in his complaint, combined with Torrise's declaration, that a reasonable officer would have "appreciated the high degree of risk involved" in continuing to drive for 10 minutes, without radioing or calling for help, after Humes flipped upside down onto his neck. This preventable accident was not the result of an evasive maneuver or collision, so a reasonable officer would assume that further driving could lead to further injury. Humes allged that he was choking and convulsing, which a jury could infer Torrise at least heard, and likely saw. A jury could find that an officer should know that continuing to drive, rather than stop, would make the consequences -- further injury -- obvious. See Castro at p. 1070.

/ / /

/ / /

/ / /

D. Immediately rendering or summoning emergency aid was a "reasonable available measure" that would have "abated the risk" of injury to Humes

    1. Radioing or calling for advice or assistance was a "reasonable available measure" to abate the risk of harm

Based on Torrise's and Humes' sworn statements, Torrise had both a two-way radio and cellphone when he was driving. Whether or not it was safe to pull over or otherwise stop the van, a jury could infer that when Humes' wheelchair broke loose, Torrise could have radioed the jail to notify them and ask for advice or assistance. Or he could have called them. It would be reasonable for a jury to infer that the jail would have advised that he stop the van, slow down, return to the jail (1300 feet away), or take other precautionary measures to abate the risk of injury to Humes. If Torrise had done so, it is likely he would not have flipped his wheelchair. Torrise never gave a reason why he chose not to do so, but Humes declared that Torrise said he was late for court, which a jury could easily believe.

    2. Slowing down and driving back to the jail when the wheelchair broke loose was a "reasonable available measure" to abate the risk of harm

When Humes' wheelchair broke loose, a reasonable officer would have slowed down, and Torrise never claimed he could not. Rather, according to Humes, shortly afterwards, Torrise actually <u>accelerated</u> the van, causing the injury. (ECF 5, p. 1.) Since Torrise knew the wheelchair was rolling, it would have been reasonable to slow down, since this would decrease any impact force. Since the jail was, according to both parties, a quarter mile (1,320 feet) away, returning to the jail was a "reasonable available measure" to abate the risk of harm by resecuring Humes' wheelchair.

    3. Stopping the van after Humes' wheelchair broke loose, and after it flipped, was a "reasonable available measure" to abate the risk of harm

        a. A reasonable officer would know that he could disregard traffic laws to make an emergency stop anywhere on the route Torrise drove

Although Torrise never gave a reason <u>why</u> it was unsafe to stop until a half

21

mile from the courthouse (10 minutes after Humes' wheelchair flipped), he cannot use traffic laws as an excuse because, under state law, he could have lawfully stopped in the middle of the road, pulled over onto the shoulder, or violated any traffic laws he felt necessary.

Under state law, any employee of a public agency, engaged in the performance of official duties, can stop in the middle of a street, road, or even freeway, "where necessary to report an incident to a peace officer" or "when necessary to avoid injury." Cal. Vehicle Code, § 21718(a). And the van Torrise was driving qualified as an "authorized emergency vehicle" which is exempt from traffic laws. Id., §§ 165(b)(1), 21055. A sheriff's deputy or jail officer is a "peace officer" who is presumed to know the law governing his conduct. Cal. Penal Code § 830.1(a); Kirkpatrick v. County of Washoe, 792 F.3d 1184, 1197 (9th Cir. 2015). Even a citizen, if ordered by a peace officer, can stop in such otherwise unsafe locations as the middle of an intersection or on a sidewalk. Cal. Veh. Code, § 22500(a), (f).

### b. A reasonable jury could find credible Humes' statements that it was safe to immediately stop the van

Because both parties observed the road conditions experienced by Torrise, and both were adult drivers, a reasonable jury could credit Humes' complaint statements about the existence of numerous safe places that Torrise could have stopped prior to where he ultimately did. No evidence was presented that Torrise was any more qualified to assess road safety than Humes.

It was thus error for the lower court to find that Humes "provides no evidence indicating that Defendant had an opportunity to stop sooner ..." (ECF 61-1, p. 9.) Humes' firsthand observations of the road are evidence. See Lafferty, 848 Fed. App'x at p. 758. "At the summary judgment stage ... the district court may not make credibility determinations or weigh conflicting evidence." Smith v. Agdeppa, 82 F.4th 994, 1010 (9th Cir. 2023).

### c. A reasonable jury could reject Torrise's claim that he could not safely stop sooner

Aside from the fact that Torrise could have slowed down and radioed or called for help after both incidents, this case primarily comes down to whether a reasonable officer would have believed it safe to pull over and stop the van, or even stop in the middle of the street and turn on the hazard lights. This is a subjective, yet fact-based determination.

Yet here the lower court improperly credited Torrise's claim that the location where he stopped was the earliest safe location. Although Torrise's belief as to the safety of other locations is irrelevant under the Eleventh Amendment's objective unreasonableness standard, even under a subjective standard analysis a jury could discredit his assertions for several reasons.

First, since Torrise's reason for not stopping sooner was that he did not have another officer with him, then why did he stop before the courthouse? A jury could easily find that if Torrise could ultimately stop by himself, then he could have done so at any location, including on the shoulder of the road at the locations where both incidents occurred.

Second, Torrise's version of events omitted many critical details which cast suspicion on the entire account. He claims it was unsafe to stop, but never mentions why. He omits mention of traffic, weather, or any road conditions whatsoever. This information would seem to be not just relevant, but the most relevant of all. He also never mentions the six other passengers, or that they screamed and yelled for him to stop. He also never mentions whether he saw Humes break loose or flip, even though he was a foot or so in front of him behind a clear divider. Nor does Torrise ever say why he did not use his radio to notify the jail or get assistance.

The parties here have "differing versions of the truth" and there is no

objective evidence that could resolve the dispute, making summary judgment improper.  See O'Doan v. Sanford, 991 F.3d 1027, 1046 (9th Cir. 2021).

  **d. Other evidence that Torrise could have stopped sooner is either not needed, not available, nonexistent, or stricken**

The lower court erroneously asserted that Humes failed to submit any evidence that Torrise could have stopped sooner.  While the court did not give a single example of what could possibly qualify for such a type of evidence, the possibilities are problematic.  They are also irrelevant, since Humes' "uncorroborated and self-serving" "affidavits alone ... suffice to defend against ... summary judgment."  Lowry, 858 F.3d at p. 1262; Janny, F.4th at p. 900. And the court took judicial notice of the intersection where Torrise finally stopped, which presumably shows the entire route driven, which shows other, earlier intersections, parking lots, and the road shoulder.  The content of this Google map is admissible evidence for purposes of summary judgment.  United States v. Perea-Rey, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012).  But the court gave no reason why it failed to notice all earlier places to stop, which is the evidentiary gravamen of this case.  But even assuming such locations did not exist, a reasonable officer still could have stopped in the middle of the road, turned on his hazard lights, and awaited emergency assistance.  The route was a city street, not a highway or freeway.  And whatever traffic existed was at least light enough to permit Torrise to take a U-turn.  Plus no allegation of inclement weather exists, and would be verifiable if it did.

There were six other witnesses to the two incidents at issue, and one gave a declaration that the lower court struck.  The others could not be located by the county attorneys, so it would be unfair to fault Humes for the same.

An expert witness declaration is also unfeasible.  Aside from proceeding in pro se and in forma pauperis, and twice moving for appointment of counsel,

an expert's findings would likely be inadmissible in this case, because the question of whether a reasonable officer would have believed it was safe to stop earlier than Torrise did is one within the common knowledge of a layman. "[D]riving is generally within the common knowledge of laypersons." Est. of Wilson v. Las Vegas Metro. Police Dep't, No. 2:18-cv-01702-APG-VCF, 2020 U.S. Dist. LEXIS 220247, * 25 (D. Nev. Nov. 24, 2020); Thomson v. St. Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994) (finding "general driving practices ... [are] well within the common knowledge and experience of the average juror"); Hunton v. Cal. Portland Cement Co., 50 Cal.App.2d 684, 696 (1942) (finding that whether or not the shoulder of the road was "unfit" to carry the defendant's truck or "made it impracticable to drive on" "was a matter of such common knowledge that the question was one of fact to be determined by the jurors without the aid of expert testimony").

"Expert testimony is generally not permitted concerning factual issues that are within the knowledge and experience of ordinary lay people ..." 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.03[2] (Mark S. Brodin, ed., Matthew Bender 2d ed. 2025).

Since the question before a jury in this case is not whether Torrise felt there was no earlier safe location to stop, but rather whether a "reasonable officer" would believe there was, expert testimony would likely be excluded, and the lower court had no basis to fault Humes for relying solely on his own observations. See, e.g., Rodriguez v. Vaniperen, 736 F.Supp.3d 699, 714 (Dist. S.D. 2024) (excluding expert testimony on question whether defendant was negligent for not pulling over to the shoulder of the road); Doux v. Western Express, Inc., 126 F.4th 978, 986-7 (4th Cir. 2025) (excluding expert testimony because it implicated "non-specialized questions about driving" that ordinary jurors could grasp on their own).

### E. Torrise's failures caused Humes' injuries

Based on Humes' verified complaint allegations, Torrise drove for about two minutes after he learned that Humes' wheelchair broke loose. There can be little doubt that a jury could find that the cause of the wheelchair flipping was that it was no longer secured. And assuming Humes is correct that there were places that Torrise could have stopped within that two minutes, a jury could easily find that Torrise's failure to stop the van caused the subsequent injury.

As to the period of 10 minutes that Humes alleges transpired between the wheelchair flipping and Torrise stopping, the injury caused is, at the very least, one of unnecessary physical pain as the weight of Humes and his wheel-chair pressed against his neck, eventually causing unconsciousness. Whether Torrise's delay in stopping caused or exacerbated the spinal injuries, or those were caused only when the chair flipped, is immaterial at this stage, since even the mere prolonging of pain, without concomitant injury, satisfies the injury and causation elements of the inquiry. See McGuckin, 974 F.3d at p. 1062.

## II. The district court abused its discretion in striking Humes' amended opposition and supporting evidence

### A. Standard of review

A lower court's denial of a request for extension of time is reviewed for abuse of discretion. Ratha v. Phatthana Seafood Co., 35 F.4th 1159, 1167 (9th Cir. 2022).

A district court's order to strike a document is reviewed de novo. Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc., 149 F.4th 1081, 1087 (9th Cir. 2025).

### B. The court granted summary judgment for a lack of evidence which the stricken documents contained

The stricken documents contained two declarations by percipient witnesses who observed Torrise's actions before, during, and after the two incidents at

issue in this case. The first was from Rosa Maria Best, who was one of the six additional passengers in the van. Her sworn statement included her observation that there were places that Torrise could have immediately stopped. Thus it was the exact evidence the court granted summary judgment against Humes because he lacked. The second declaration was from Humes, but was far more particularized than his complaint allegations regarding Torrise's ability to stop sooner. It thus also contained the exact evidence the court claimed was lacking.

## C. The court had discretion to consider the stricken evidence

### 1. The court had discretion to allow Humes to cure the deficiencies of the original "opposition"

Humes' original "opposition" was arguably not one, because it failed to meet a variety of legal requirements. Humes' two paragraph "opposition" failed to assert whether any facts could or could not be genuinely supported, in violation of Rule 56(c)(1). He failed to cite "particular parts of materials in the record," in violation of Rule 56(c)(1)(A). He failed to object to any of Torrise's cited materials for inadmissibility (like he did in his amended opposition), as required by Rule 56(c)(2). And Humes failed to attach any affidavits or declarations in support of the disputed issues, as required by Rule 56(c)(4).

In considering a motion for summary judgment, a court can order a nonmovant to cure any deficiencies:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; ... or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The drafters of the Rule have stated that this "second chance" option 'will be the courts' first step.'" 11 James W. Moore et al.,

Moore's Federal Practice – Civil § 56.72[3] (3d ed. 2025).  This is "especially true for pro se litigants."  Id.

This Court and others have reversed lower courts' entry of summary judgment where the court failed to give the nonmoving party an opportunity to cure defects in their opposition.  Alcala v. Monsanto Co., 498 Fed. App'x 717, 718 (9th Cir. 2012) (where plaintiff was pro se, "it was improper to grant summary judgment without providing sufficient notice of the possible deficiencies in his evidence"); Lozano v. Knudson, 687 Fed. App'x 530, 531 (9th Cir. 2017) (vacating summary judgment due to pro se inmate's "confusion on the procedural requirements" and remanding to allow inmate to "cure technical deficiencies in his filings"); Lauria v. Lieb, 152 F.4th 549, 552 (3d Cir. 2025) (vacating summary judgment against pro se inmate where court failed to sua sponte give inmate opportunity to properly support his opposition by curing defects in affidavits).

The facts in this case supported a Rule 56(e) "second chance" even more than those in the cases above, because Humes' procedural noncompliance was far greater, his case file was destroyed, and he suffered severe mental illness that had just required a transfer to a facility with a higher level of care.

2. **The court had discretion to consider Humes' late amended opposition**

The district court also abused its discretion by not considering Humes' late amended opposition and supporting evidence.  The court had discretion to do so, there would have been no prejudice to Torrise, and it would have been fair in light of the fact that the court had not yet ruled, it was only a few months late, and the court had excused two missed deadlines and granted over a year of extensions to the county attorney.

District courts have discretion to consider late-filed amended oppositions to motions for summary judgment, even where no leave was sought.  See, e.g., United States v. Le Beau, 71 F.Supp.3d 888, 895–96 (S.D. Cal. 2024); Gonzalez v.

Clough, No. 2:17–cv–0176–WBS–DMC–P, 2024 U.S. Dist. LEXIS 110748, * 2 (E.D. Cal. June 24, 2024) (exercising discretion to consider pro se opposition filed two months after Magistrate's recommendations, though no leave sought to do so); Ackerson v. Elliott, No. 2:21–cv–2205–WBS–KJN–P, 2024 U.S. Dist. LEXIS 11067, * 3 (E.D. Cal. Jan. 22, 2024) (allowing pro se inmate to file amended opposition though no leave sought); Sharma v. Dasha, No. 22–00648–PHX–SPL (ESW), 2024 U.S. Dist. LEXIS 214531, * 2 (D. Az. Jan. 5, 2024) (same); Levy v. Client Servs. Inc., No. 2:23–cv–01099–APG–NJK, 2024 U.S. Dist. LEXIS 87379, * 5 (D. Nev. May 15, 2024) (allowing pro se plaintiffs to file amended opposition); Schmitz v. Asman, No. 2:20–cv–00195–DJC–CKD (PS), 2023 U.S. Dist. LEXIS 223694, * 8–9 (E.D. Cal. Dec. 15, 2023) (same).

Even represented litigants, not appearing pro se, are sometimes granted leave to amend their opposition. See, e.g., Lopez v. City of Los Angeles Habra Heights, No. 8:21–cv–01193–JGB (MAR), 2024 U.S. Dist. LEXIS, * 5 (C.D. Cal. Dec. 4, 2024); T.D. Pro. Servs. v. Truyo, Inc., No. CV–22–00018–PHX–MTL, 2024 U.S. Dist. LEXIS 189285, * 4 (D. Az. Oct. 15, 2024) (denying defendant's motion to strike amended opposition which was filed after defendant's reply); Int'l Brotherhood of Elec. Workers, Local 1547 v. Alaska Communs. Sys. Holdings, Inc., 424 F.Supp.3d 598, 600 (D. Ak. 2019) (allowing plaintiff to file amended opposition); Taylor v. Garrison Prop. & Cas. Ins. Co., No. 2:17–cv–07550–RGK–GJS, 2018 U.S. Dist. LEXIS 238102, * 5–6 (C.D. Cal. Apr. 26, 2018) (allowing late opposition despite counsel's failure to file motion showing excusable neglect).

District courts have discretion to construe late-filed documents as requests for leave to file the document. Estate of Taschek v. Fidelity Life Ass'n, 740 F.Supp.3d 1072, 1078 n.27 (D.Nev. 2024)("courts in this circuit have ... exercised their discretion to construe late-filed briefs and other filings as extension requests"; collecting cases).

Although Humes' amended opposition and supporting documents were arguably mislabeled, district courts "may ignore the legal label that a pro se litigant attaches" to a document and "recharacterize" it if necessary. Ross v. Williams, 896 F.3d 958, 969 n.13 (9th Cir. 2018).

This Court has even found an abuse of discretion where a lower court failed to consider evidence in support of an opposition to motion to dismiss that was raised for the first time in a pro se inmate's objections to the magistrate's findings and recommendations. Akhtar v. Mesa, 698 F.3d 1202, 1209 (9th Cir. 2012) (citing Jones v. Blanas, 393 F.3d at p. 935).

**D. The court should have at least ordered Humes to show cause why his late amended opposition should be entertained, because it was aware of facts that could qualify as good cause or excusable neglect**

It can be an abuse of discretion for a lower court to take an adverse action against a pro se party without giving him "an opportunity to explain his reasons for failing to ... comply" with a rule. Briscoe v. Klaus, 538 F.3d 252, 258 (3d Cir. 2008); see also, Briones v. Riviera Motel & Casino, 116 F.3d 379, 382 (9th Cir. 1997) (vacating order granting motion to dismiss where pro se party filed opposition three months late, because party might have been able to show excusable neglect); Swiderski v. Harman, 336 F.R.D. 98, 103-4 (E.D. Pa. 2020) ("we refrain from finding [the pro se inmate plaintiff] personally responsible for his delayed response until he has had an opportunity to explain his failure").

In this case the lower court was aware of several facts about Humes which, individually or cumulatively, could have satisfied the good cause or excusable neglect standards excusing his late amended opposition. This included his recent transfer to an outpatient psychiatric program due to new, severe mental illness symptoms. (ECF 46, 49.) Also, his case file -- with all documents pertaining to the lawsuit itself -- was destroyed by an officer in retaliation. (ECF 46.)

30

Mental illness and a lack of legal property can both be grounds for a finding of excusable neglect. See, Yow Wing Yeh v. Martel, 751 F.3d 1075, 1078 (9th Cir. 2014) (holding that mental impairment may serve as basis for equitable tolling of AEDPA limitations period); Kendrick v. Pina, No. 1:08-cv-1055-RCC, 2013 U.S. Dist. LEXIS 68572, * 5 (E.D. Cal. May 14, 2013) ("courts in other states have specifically found mental illness sufficient to constitute excusable neglect"); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1013 (9th Cir. 2009) (deprivation of legal materials); Dickershaid v. Martel, 648 Fed. App'x 618, 621 (9th Cir. 2016) (same).

The Supreme Court has also expressly approved of the principle that "ignorance of the rules" may sometimes constitute excusable neglect. Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd., 507 U.S. 380, 392, 113 S.Ct. 1489, 1489 L.Ed.2d 74 (1993). On the facts before the lower court here, Humes' ignorance of the rules would likely have been established.

## III. The district court erred when it sua sponte ordered Torrise to file a post-deadline motion for enlargement of time to file a late motion for summary judgment

### A. Standard of review

A district court's grant of an extension of time is reviewed for abuse of discretion. Jenkins v. Commonwealth Land Title Ins. Co., 95 F.3d 791, 795 (9th Cir. 1996). However, "there is no discretion to grant a post-deadline extension absent a motion and showing of excusable neglect." Drippe v. Tobelinksi, 604 F.3d 778, 783 (3d Cir. 2010) (relying on Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 896, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

### B. A district court has no discretion to hear a post-deadline request for enlargement of time absent a noticed motion showing excusable neglect

"When an act may be or must be done within a specified time, the court may for good cause, extend the time ... on motion made after the time has expired

if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B) (emphasis added). "The requirement for a formal motion" under Rule 6(b)(1)(B) "is an important protection for the opposing party because it provides notice and allows the opposing party to respond." 1 Moore's Federal Practice – Civil § 6.06, n. 32 (emphasis added). "In contrast to when a request for extension is made before expiration of a deadline, when the request for an extension comes after the expiration of the time period in question, the only procedural mechanism for securing the extension is 'on motion.'" 1 Bender's Federal Practice Forms, Comment on Rule 6, Summary of Rule Provisions, nn. 81–84 (emphasis added).

Numerous courts have held that Rule 6(b)(1)(B) forbids consideration of post-deadline motions unless a noticed motion is filed that shows excusable neglect. United States v. Robinson, 361 U.S. 220, 228–9, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960) (stating that Rule 6(b) is "mandatory and jurisdictional"); Bazarian v. Desarrollos, 342 F.Supp.3d 1, 28 (D.D.C. 2018); Smith v. District of Columbia, 430 F.3d 450, 457 (D.C. Cir. 2005); First Penn-Pacific Life Ins. Co. v. Evans, 659 F.Supp.2d 727, 732 n.5 (D.Md. 2009); Jones v. Central Bank, 161 F.3d 311, 314 n.2 (5th Cir. 1998).

Other courts have held that it is an abuse of discretion for a court to "consider an untimely filing in the absence of such a motion" under Rule 6(b)(1)(B). Gotses v. U.S. Bancorp, No. 2:17-cv-08670-CBM (AFMx), 2019 U.S. Dist. LEXIS 220040, * 3 (C.D. Cal. Nov. 14, 2019); United States v. Springer, 447 Fed. App'x 877, 879 (10th Cir. 2011) (finding district court abused its discretion in granting untimely motion when party never filed motion for extension of time).

## C. The court's order was functionally equivalent to a sua sponte order

Three weeks after Torrise's deadline expired to file a motion for summary

32

judgment, the court issued an "order directing defendant to file motion for extension of time and show good cause for failure to comply with court's deadline." (ECF 39.) No such order was issued to Humes "directing plaintiff to file motion for leave to file amended opposition and show cause," before the court granted summary judgment based on a lack of evidence, and striking his amended opposition which contained such evidence. Why a county attorney should get such leniency, but not an indigent pro se inmate, the court never explained.

Regardless, since the court could not sua sponte grant extra time, post-deadline, was it proper for it to, sua sponte, order Torrise to file a motion requesting such time? If so, then Rule 6's prohibition is meaningless. Court's wanting to ignore Rule 6(b)(1)(B) -- for whatever reason -- could always just order the offending party to file a motion which the court intends to grant. This unfairly prejudices the nonmovant, who must now oppose a motion he rightly assumed could not be filed. Moreover, it encourages dilatory tactics, since both parties justifiably believe there is a chance, however small, that they can receive the benefits of allowing a motion deadline to expire, without the cost of losing the opportunity to do so upon court order. Such machinations and their consideration in the litigants' tactical calculus run afoul of Rule 1's requirement that the rules, including Rule 6, "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."

Here the error was fatally prejudicial. Torrise had missed his first deadline to file for summary judgment, _causing_ the court to order mediation. Humes thus rationally believed this avenue was foreclosed. But then after the mediation failed, the court ordered Torrise to file the motion. Then after several grants of extra time, it appeared Torrise had abandoned his attempt

to obtain summary judgment. Again, Humes logically believed this avenue had closed. If the court had followed Rule 6(b)(1)(B), Torrise would not have been allowed to file his motion, and a trial date would have been set.

D. **Assuming arguendo the court had discretion to consider the motion, it abused it by not conducting an excusable neglect analysis, not giving Humes an opportunity to respond, and granting the motion on improper grounds**

    1. **The court improperly conducted a "good cause" analysis**

    Rule 6(b)(1)(A) explicitly requires the showing of "excusable neglect" by a party seeking leave to file a document post-deadline. "The excusable neglect standard as to post-expiration extensions of time <u>is more exacting</u> than the good cause standard of Rule 6(b)(1)(A)." 1 <u>Moore's Federal Practice - Civil</u> § 6.06. "Any post-deadline extension ... is permissible <u>only</u> where the failure to meet the deadline was the result of excusable neglect." <u>Lujan v. Nat'l Wildlife Federation</u>, 497 U.S. 871, 896, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (emphasis added).

    Here the lower court specifically ordered Torrise to "show <u>good cause</u>" for his post-deadline extension request. (ECF 39.) The Rule 6(b)(1)(B) analysis of excusable neglect must adhere to the factors set forth in <u>Pioneer Inv. Servs. Co. v. Brunswick Asocs.</u>, 507 U.S. 380, 388, 391, 113 S.Ct. 1489, 123 L.Ed.2d 274 (1993). <u>Zurich Amer. Insur. Co. of Ill. v. Accuire, LLC</u>, 828 Fed. App'x 442, 443 (9th Cir. 2020). The court failed to do so, and instead found "good cause appearing" in Torrise's motion, but offered no explanation or analysis. (ECF 41.) Thus, the court abused its discretion. <u>See</u> <u>Lemoge v. United States</u>, 587 F.3d 1188, 1194 (9th Cir. 2009) (finding "district court abused its discretion by not identifying the correct legal rule [of the <u>Pioneer</u> test] and omitting analysis of an important part of that rule").

    2. **The court improperly failed to allow Humes to respond**

    "The requirement for a <u>formal</u> motion" under Rule 6(b)(1)(B) "is an

important protection for the opposing party because it provides notice and allows the opposing party to respond." 1 Moore's Federal Practice – Civil § 6.06, n. 32 (emphasis added). "In contrast to when a request for extension is made before expiration of a deadline, when the request for an extension comes after the expiration of the time period in question, the only procedural mechanism for securing the extension is 'on motion." 1 Bender's Federal Practice Forms, Comment on Rule 6, nn. 81–84 (emphasis added).

In this case, not only was no notice provided, but the court gave Humes no opportunity to respond, and instead granted Torrise's request in five days, before Humes even got a copy of it. (See ECF 40, Motion dated 01/30/25 and ECF 41, Order dated 02/04/25). Lower courts have no discretion to violate their own local rules, which "have the force of law." Hollingsworth v. Perry, 558 U.S. 183, 191, 130 S.Ct. 705, 175 L.Ed.2d 657 (2010) (per curiam). Here, Local Rule 7–3(a) gave Humes 14 days to respond, not five, and not zero.

### 3. Torrise failed to show excusable neglect

Even assuming the lower court mistakenly used the "good cause" phrase twice, but actually conducted a Pioneer analysis, and also assuming its failure to give Humes an opportunity to respond was harmless, it still abused its discretion when it found Torrise had shown good cause for his late motion.

The reason counsel gave for missing the deadline was that she had "been overwhelmed both emotionally and physically, with the unexpected passing of her stepmother and the resulting added responsibilities ... related to her elderly medically fragile father." (ECF 40, p. 4.) Counsel admitted that this was "no excuse" and that she was "responsible for any delays." (Id.)

While this is a sad situation, it fails both the excusable neglect test and the good cause test for several reasons. First, counsel was not the only attorney for Torrise. Rather, she was just one deputy county attorney. And her

boss, Susan K. Blitch, filed a formal "Notice of Appearance" in the case right before the court ordered Torrise to file a dispositive motion. (ECF 34.) There was thus every reason to assume that Blitch, or other deputy counsel, could have intervened for counsel during the difficult period. But the court never asked counsel about this, and counsel never explained it. Other courts have found a lack of excusable neglect where counsel's failure could have been avoided with the help or substitution of other counsel in the case or firm. See, e.g., Black v. Wrigley, 997 F.3d 702, 714 (7th Cir. 2021) (no excusable neglect where counsel had a mental breakdown, but plaintiff had two attorneys); Clergy & Laity Concerned v. Chicago Bd. of Educ., 586 F.Supp. 1408, 1411 (N.D. Ill. 1984) (no excusable neglect for attorney's failure to contest motion where defendants did "not show why another of their several attorneys did not seek an extension of time); Meza v. Washington State Dep't of Social & Health Svcs., 683 F.2d 314, 315 (9th Cir. 1982) (no excusable neglect where assistant AG's wife hospitalized, but he failed to explain why other members of the AG's office could not have prepared the notice); Flett v. W.A. Alexander & Co., 302 F.2d 321, 323 (7th Cir. 1962) (no excusable neglect where one attorney incapacitated, but no reason given why other counsel could not have acted).

Second, counsel never explained, and the court never asked, why she did not inform the court of her situation and need before the deadline.

Third, and perhaps most importantly, counsel never explained how being "overwhelmed" prevented her from at least notifying the court that she needed more time to finish her motion. This is another example of why the court should have followed Rule 6 and L.R. 7-3 to allow Humes to respond.

Finally, the fact that a party's attorney's family member is ill or dies has been consistently found to not meet the criteria for good cause or excusable neglect, absent a causal nexus, which counsel here never even alleged. See,

e.g., Skrabec v. Town of N. Attleboro, 321 F.R.D. 46, 47 (D. Mass. 2017) ("an attorney's neglect is not excusable even after the death of a family member because a lawyer's duty of diligence transcends both upheaval at work and personal tragedy"); Martin v. Giordano, 185 F.Supp.3d 339, 364-5 (E.D.N.Y. 2016) (rejecting counsel's claim of excusable neglect based on mother's death); Williams v. Virginia, 524 Fed. App'x 40, 41 (4th Cir. 2013) (rejecting claim of excusable neglect due to counsel's mother's death); Harrington v. City of Chicago, 433 F.3d 542, 548 (7th Cir. 2006) (rejecting claim of excusable neglect because "despite the deaths of his family members" counsel "could have and should have contacted the district court ... to explain his circumstances"); Davila-Alvarez v. Escuela de Medicina Universidad Centro del Caribe, 257 F.3d 58, 65 (1st Cir. 2001) (affirming district court's rejection of claim of excusable neglect due to death of counsel's brother and law partner).

## CONCLUSION

This Court should vacate the district court's entry of summary judgment and remand this case for further proceedings.

DATED:  January 7, 2026

Respectfully submitted,

_____
Francis A. Humes,
Appellant-Plaintiff in pro se

## Certificate of Compliance

This document complies with the type-volume limit of Fed. R. App. P. 32 because, excluding the parts exempted by Fed. R. App. P. 32(f), this document uses a monospaced typeface and contains 1,036 lines of text. This document complies with the typeface requirements of Fed. R. App. P. 32(a) because it has been prepared in a monospaced typeface using a typewriter with 12-point Prestige font.

Francis A. Humes
Appellant-Plaintiff in pro se

## Declaration of Inmate Filing

I am an inmate confined in an institution. Today, January 11, 2026, 26 ~remailed I am depositing the Appellant's Opening Brief in this case in the internal mail system of this institution. First-class postage is being prepaid either by me or by the institution on my behalf.

I declare under penalty of perjury that the foregoing is true and correct.

Rain Dickey-O'Brien, # T-79076
P.V.S.P., D5-250
P.O. Box 8500
Coalinga, CA 93210

Addendum of Authorities

Table of Contents

                                                  Page

Fourteenth Amendment, U.S. Constitution . . . . . . . . . . . . . . . . . .A-1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Rule 6, Federal Rules of Civil Procedure . . . . . . . . . . . . . . . A-1

Rule 56, Federal Rules of Civil Procedure . . . . . . . . . . . . . . .A-1

Cal. Penal Code § 830.1 . . . . . . . . . . . . . . . . . . . .A-3

Cal. Vehicle Code § 165 . . . . . . . . . . . . . . . . . . . .A-3

Cal. Vehicle Code § 21055 . . . . . . . . . . . . . . . . . . . .A-4

Cal. Vehicle Code § 21718 . . . . . . . . . . . . . . . . . . . .A-4

Cal. Vehicle Code § 22500 . . . . . . . . . . . . . . . . . . . .A-4

**Fourteenth Amendment to the U.S. Constitution:**

Section 1. . . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law ...

**42 U.S.C. § 1983:**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ...

**Rule 6, Federal Rules of Civil Procedure:**

(b) Extending Time:

(1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:

(A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

**Rule 56, Federal Rules of Civil Procedure:**

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense -- or the part of

A-1

each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

. . .

(c) Procedures.

    (1) <u>Supporting Factual Positions.</u>  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

        (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

        (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

    (2) <u>Objection That a Fact is Not Supported by Admissible Evidence.</u> A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

    (3) <u>Materials Not Cited.</u>  The court need consider only the cited materials, but it may consider other materials in the record.

    (4) <u>Affidavits or Declarations.</u>  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters

stated.

(d) **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by
affidavit or declaration that, for specified reasons, it cannot present
facts essential to justify its opposition, the court may:

    (1) defer considering the motion or deny it;

    (2) allow time to obtain affidavits or declarations or to take
discovery; or

    (3) issue any other appropriate order.

(e) **Failing to Properly Support or Address a Fact.** If a party fails to
properly support an assertion of fact or fails to properly address another
party's assertion of fact as required by Rule 56(c), the court may:

    (1) give an opportunity to properly support or address the fact;

    (2) consider the fact undisputed for purposes of the motion;

    (3) grant summary judgment if the motion and supporting materials --
including the facts considered undisputed -- show that the movant is
entitled to it; or

    (4) issue any other appropriate order. . . .


**Cal. Penal Code § 830.1:**

(a) A sheriff, undersheriff, or deputy sheriff, employed in that capacity,
of a county . . . is a peace officer. . . .

**Cal. Vehicle Code § 165:**

An authorized emergency vehicle is: . . .

(b) Any publicly owned vehicle operated by the following persons, agencies,

    (1) Any federal, state, or local agency, department, or district employing
peace officers as that term is defined in Chapter 4.5 (commencing
with Section 830) of Part 2 of Title 3 of the Penal Code, for use

by those officers in the performance of their duties.

**Cal. Vehicle Code § 21055:**

The driver of an authorized emergency vehicle is exempt from [Chapters 2–10] of this division, and [Articles 3 and 4] of Chapter 5 of Division 16.5, under all of the following conditions:

(a) If the vehicle is being driven in response to an emergency call or while engaged in rescue operations . . .

(b) If the driver of the vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to other drivers and pedestrians. . . .

**Cal. Vehicle Code § 21718:**

(a) No person shall stop, park, or leave standing any vehicle upon a freeway which has full control of access and no crossings at grade except:

    (1) When necessary to avoid injury or damage to persons or property.

    (2) When required by law or in obedience to a peace officer ...

    (3) When ... any employee of a public agency is actually engaged in the performance of official duties. . . .

**Cal. Vehicle Code § 22500:**

A person shall not stop, park, or leave standing any vehicle whether attended or unattended, except when necessary to avoid conflict with other traffic or in compliance with the directions of a peace officer ..., in any of the following places:

(a) Within an intersection ...

(f) On a portion of a sidewalk ...

(h) On the roadway side of a vehicle stopped, parked, or standing at the curb or edge of a highway ...

January 26, 2026

Rain Dickey-O'Brien
# T-79076, D5-250
P.O. Box 8500
Coalinga, CA 93210

Clerk of the Court
U.S. Court of Appeals
P.O. Box 193939
San Francisco, CA 94119

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JAN 3 0 2026

FILED_____
DOCKETED_____
            DATE        INITIAL

      RE:  Late filing; <u>Humes v. Torrise</u>, No. 25-6126

Dear Clerk of the Court:

      Please excuse the late filing of the enclosed brief in the above case.
It was returned to me by the prison mailroom as NSF (not sufficient funds)
for postage, to be drawn from my inmate trust account.  I originally gave
it to staff on January 11 (Sunday) for mailing on the 12th.  However, it
was returned to me unmailed on January 23 (Friday).  Because mail is not
processed to go out on Fridays (in all state prisons) I was forced to wait
until today to re-mail it.  The Appellant in this case, Mr. Humes, may have
already received an extension of time to file this brief, rendering all this
moot.  I apologize regardless.

      I have not bound the brief, which totals 56 pages (37 for the principal
brief) because I was told that your office will have it scanned, and Circuit
Rule 5-2(a) says to only provide the original.  I apologize if I'm wrong.

      Thank you for your help and time.

Sincerely,

Rain Dickey-O'Brien